# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DOYLE JIMMY LANGFORD, JR. ,**

    **Plaintiff,**

v.                                                                                          Case No:  6:18-cv-23-Orl-41DCI

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Doyle Jimmy Langford, Jr. (Claimant) appeals the Commissioner of Social Security's final decision denying his application for disability benefits.  Doc. 1.  Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings.  Doc. 15 at 9-11, 14-16, 20.  The Commissioner argues that the ALJ committed no legal error and that his decision is supported by substantial evidence and should be affirmed.  *Id*. at 11-14, 16-20.  For the reasons discussed below, the undersigned respectfully **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

**I.    Procedural History**

This case stems from Claimant's application for disability insurance benefits, in which he alleged a disability onset date of May 1, 2010.  R. 178-80.  Claimant's application was denied on initial review and on reconsideration.  The matter then proceeded before an ALJ.  On July 8, 2015, the ALJ entered a decision denying Claimant's application for disability benefits.  R. 17-30.

Claimant requested review of the ALJ's decision, and the Appeals Council denied his request for review. R. 8-10. This appeal followed.

**II.     The ALJ's Decision**

The ALJ found that Claimant suffered from a severe impairment of lumbar spine disorder. R. 19-20. In addition, the ALJ found that Claimant suffered from the following non-severe impairments: uncontrolled blood pressure; and anxiety. R. 20-21. The ALJ, however, determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment. R. 21-22.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567[1] with the following additional limitations:

> [T]he claimant is limited to occasional climbing of ramps, stairs, ladders, ropes and scaffolds, and occasionally balancing, stooping, kneeling, crouching and crawling. The claimant should never be exposed to unprotected heights, moving mechanical parts, operation of a motor vehicle, extreme cold or vibration. Lastly, the claimant is limited to simple, routine tasks, is limited to simple work-related decisions, and is limited to occasional contact with supervisors, coworkers and the general public.

R. 22. In light of this RFC, the ALJ found that Claimant is unable to perform his past relevant work but is able to perform other work in the national economy. R. 28-30. Thus, the ALJ concluded that Claimant was not disabled from his alleged onset date, May 1, 2010, through the date of the ALJ's decision, July 8, 2015. R. 30.

---

[1] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

**III.     Standard of Review**

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.     Analysis**

Claimant raises the following assignments of error: 1) the ALJ failed to apply the correct legal standards to Dr. Michael Moyer's treatment records; and 2) the ALJ erred by finding Claimant's testimony concerning his pain and limitations not entirely credible. Doc. 15 at 9-11, 14-16. The undersigned will address each assignment of error in turn.

**A.  Dr. Moyer's Treatment Records**

Claimant notes that the ALJ found some of the handwritten notes in Dr. Moyer's treatment records to be illegible, and, as a result, the ALJ concluded that the notes were "not supportive to the claimant." Doc. 15 at 10 (citing R. 25). Claimant argues that the ALJ should have contacted

Dr. Moyer so he could clarify his handwritten notes. *Id*. at 10-11. The ALJ did not contact Dr. Moyer for clarification, and, thus, Claimant argues that the ALJ did not apply the correct legal standards in considering Dr. Moyer's treatment records and, consequently, the ALJ's decision is not supported by substantial evidence. *Id*. at 11.

The Commissioner notes that many of Dr. Moyer's treatment records consisted of circled and checkbox examination findings, with minimal handwritten notes. *Id*. at 12. The Commissioner contends that the ALJ considered Dr. Moyer's treatment records and did not rely on the illegibile portions of Dr. Moyer's treatment records to discredit any of Dr. Moyer's findings. *Id*. at 12-13. Instead, the Commissioner argues that the ALJ appropriately noted that Dr. Moyer's handwritten notes did not support Claimant's allegation that he was disabled. *Id*. at 13. Further, the Commissioner contends that Claimant has not pointed to or produced any evidence to suggest that Dr. Moyer's illegible handwritten notes would support a disability finding. *Id*. at 12-14. Therefore, the Commissioner argues that Claimant has failed to show that Dr. Moyer's handwritten notes create evidentiary gaps in the record that result in unfairness or clear prejudice. *Id*. at 14.

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[2] "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Id*. at 1423. Thus, in determining whether it is necessary to remand a case for development of the record, the Court

---

[2] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Here, Claimant was represented during the administrative proceedings. R. 17, 39. Therefore, the ALJ only had a basic duty to develop the record.

- 4 -

considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* (internal quotation marks omitted).

Dr. Moyer treated Claimant on several occasions between October 2010 and October 2012. R. 285-307. As the Commissioner noted, many of Dr. Moyer's treatment records consisted of circled and checkbox examination findings, with minimal handwritten notes. R. 285-304.

The ALJ considered these treatment records, stating the following:

> Dr. Moyer's notes from October of 2010 document findings of lumbosacral tenderness to palpitation with sacroiliac tenderness bilaterally; pain with straight leg raising on the right at 60 degrees and left at 70 degrees; pain with lumbar flexion at 80 degrees, lumbar extension at 30 degrees, and lumbar rotation at 30 degrees. The claimant ambulated with a limp, neck range of motion was normal, his neurological evaluation was normal, as was evaluation of the extremities (Ex. 2F/27-29). Dr. Moyer referenced the 2007 MRI report mentioned above and assessed the claimant with back pain status post laminectory/diskectomy of L5-S1; and a host of other conditions and prescribed Oxycodone, Oxycontin, and Flexeril (Ex. 2F/28). <u>It should be noted that this exhibit also includes a series of handwritten notes which are not legible but appear to be Dr. Moyer's (Ex. 2F/7-26). It appears that the claimant returned monthly since through 2013 (Ex. 3F/3). As the content is not entirely clear, these evaluation notes are not supportive to the claimant.</u>

R. 25 (emphasis added). Thus, the ALJ considered Dr. Moyer's treatment records and noted that some of them contained illegible handwritten notes, which, due to their purported illegibility, the ALJ found were "not supportive to the claimant." *Id.*

Claimant contends that the ALJ should have contacted Dr. Moyer so he could clarify his handwritten notes. Doc. 15 at 10-11 (citing SSR 96-5p, 1996 WL 374183 (July 2, 1996); *Yamin v. Comm'r of Soc. Sec.*, Case No. 6:07-cv-1574-Orl-GJK, 2009 WL 799457 (M.D. Fla. Mar. 24, 2009)). The ALJ did not contact Dr. Moyer for clarification and, thus, Claimant argues that the ALJ did not apply the correct legal standards in considering Dr. Moyer's treatment records and, consequently, the ALJ's decision is not supported by substantial evidence. *Id.* at 11. The undersigned is not persuaded.

The ALJ considered Dr. Moyer's treatment records, which, as discussed above, primarily consisted of circled and checkbox examination findings, with minimal handwritten notes. R. 25 (citing R. 285-307). There is no indication that the ALJ was unable to understand or did not consider Dr. Moyer's circled and checkbox examination findings. *See* R. 25. Thus, it appears that the ALJ was simply unable to understand the few handwritten notes contained in Dr. Moyer's treatment records.

Claimant points to SSR 96-5p and the decision in *Yamin v. Comm'r of Soc. Sec.* for the proposition that the ALJ was required to contact Dr. Moyer to clarify his handwritten notes. Doc. 15 at 10-11. This authority, however, does not support Claimant's position. First, SSR 96-5p states that the Commissioner is required to "make every reasonable effort to recontact [medical] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to [the Commissioner]." SSR 96-5p, 1996 WL 374183, at *2. This is not a situation where Dr. Moyer provided an opinion on an issue reserved to the Commissioner. Thus, the guidance in SSR 96-5p does not apply. Second, *Yamin* is distinguishable from this case. In *Yamin*, the court found that it was unclear whether the ALJ's decision to discount a treating physician's opinion was supported by substantial evidence because that physician's treatment records and opinion were "largely and materially incomprehensible." *Yamin*, 2009 WL 799457, at *12-14. Thus, the *Yamin* court reversed and remanded the case to the Commissioner to clarify the illegible records. *Id*. at *14. Here, the treatment records only contain a few purportedly illegible handwritten notes. *See* R. 285-304. Further, unlike the situation in *Yamin*, Dr. Moyer did not complete a separate opinion concerning Claimant's functional limitations. *See* R. 279-313. These facts not only distinguish this case from *Yamin*, but they also tend to militate

against finding that the illegible notes created an evidentiary gap in the record and the ALJ's failure to contact Dr. Moyer resulted in unfairness or clear prejudice.

While the ALJ was unable to understand Dr. Moyer's handwritten notes, the undersigned's independent review of the record reveals that many of Dr. Moyer's handwritten notes are legible. For example, Dr. Moyer routinely wrote that Claimant had tenderness in his left knee and was anxious. R. 286-88, 290, 292, 294-304, 312-13. Further, Dr. Moyer wrote comments noting that he reviewed the goals of treatment with Claimant (R. 289-91), that Claimant has no health insurance (R. 285, 291), that Claimant needed to refill his medication (R. 293), that Claimant underwent an MRI in April 2012 (R. 291), and that Claimant is satisfied with his medication (R. 285-91, 311-13). Moreover, many of Dr. Moyer's treatment records contained no handwritten comments. R. 294-96, 298, 300-03. Upon review of Dr. Moyer's treatment records, it appears that Dr. Moyer did not offer any opinions concerning Claimant's functional limitations. Indeed, Claimant points to no evidence or testimony demonstrating that Dr. Moyer opined that Claimant had limitations greater then those contained in the RFC determination. *See* Doc. 15 at 9-11. Thus, Claimant has failed to demonstrate that there are evidentiary gaps in the record that thwarted the ALJ's ability to make a conclusive determination about whether Claimant is disabled. Further, even assuming Dr. Moyer's few handwritten notes constitute evidentiary gaps in the record, Claimant has failed to demonstrate that such gaps resulted in unfairness or clear prejudice. Thus, the undersigned finds that Claimant has failed to demonstrate that the ALJ breached his duty to develop a full and fair record by not contacting Dr. Moyer. Therefore, it is respectfully recommended that the Court reject Claimant's first assignment of error.

### B. Credibility

Claimant argues that the ALJ erred by relying on Claimant's activities of daily living in determining that his testimony concerning the intensity, persistence, and limiting effects of his impairments was not entirely credible. Doc. 15 at 15. Further, Claimant argues that the ALJ's credibility determination is erroneous because he failed to apply the correct legal standards to Dr. Moyer's treatment records. *Id.* at 15-16.

The Commissioner argues that the ALJ articulated specific reasons in support of his credibility determination and that those reasons are supported by substantial evidence, as is the ALJ's ultimate determination that Claimant's testimony concerning the intensity, persistence, and limiting effects of his impairments was not entirely credible. *Id.* at 16-20.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through the claimant's own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* at § 404.1529(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to

her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

The ALJ summarized Claimant's testimony (R. 22-23) and found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 24. The ALJ provided several reasons in support of this determination. First, the ALJ stated:

> At the forefront, it must be underlined that the claimant's allegations are not consistent with his admitted activities of daily living. Notably, the claimant is able to drive and ride in a car, sit through a movie at the cinema, attends church and admitted to watching television during the day. In other words, the claimant has a fairly active social life with his fiancée, and his reports of inability to sit for long periods of time are undermined by his admission of going to the movies. This conclusion is also corroborated by the claimant's attendance of church services, which is also indicative of no real deficits in social functioning or difficulties in social settings. These activities are also not indicative of difficulties in ability to maintain adequate attention and concentration.

R. 24.  Second, the ALJ discussed the medical records and, in doing so, found that many of Claimant's treatment records provided little support for Claimant's allegations. R. 25 (discussing Claimant's treatment with Dr. Paul Furey and finding that his description of Claimant's impairments and treatment "provide[d] little support for the claimant's allegations."); *Id*. (discussing Claimant's treatment with Dr. Tracy Colchamiro and finding that her "minimal clinical notes do not lend any real support to the claimant's allegations."); R. 26 (discussing Claimant's treatment with Dr. Joseph DeLuca and finding that his "clinical notes do not provide significant support to the claimant's allegations."). Third, the ALJ found that Claimant's lack of

hospitalization or specialized treatment for the severe anxiety attacks he allegedly suffered during the relevant period undermined the credibility of his allegations. R. 26.[3]

Claimant's second assignment of error should be rejected because Claimant does not challenge the second and third reasons the ALJ articulated in support of his credibility determination (i.e. the inconsistency between Claimant's allegations and his treatment records and the lack of hospitalization or specialized treatment for his mental impairments), and those reasons are supported by substantial evidence, as is the ALJ's credibility determination. *See* Doc. 15 at 14-16. Claimant's failure to challenge the second and third reasons amounts to a tacit concession that those reasons are supported by substantial evidence and support the ALJ's credibility determination. Further, notwithstanding Claimant's concessions, those reasons tend to support the ALJ's credibility finding. For example, Claimant testified that his ability to sit, stand, and walk is severely limited. R. 57-58. Those limitations were echoed by one of Claimant's treating physician's, Dr. DeLuca. R. 316-17. However, as the ALJ noted, Dr. DeLuca's treatment records did not contain any objective examination findings supporting the severe limitations identified in his opinions or during Claimant's testimony. R. 26, 393, 343, 356-59, 365-66, 372-73, 384-85, 388, 392, 396, 400, 404.[4] As the ALJ found, the absence of such evidence does "not provide significant support to the claimant's allegations." R. 26. Thus, the undersigned finds that the second and third reasons the ALJ articulated in support of his credibility determination are supported by substantial evidence and do, indeed, support the ALJ's credibility determination. Further, those reasons, standing alone, are enough to support the ALJ's credibility determination

---

[3] The ALJ partially credited Claimant's allegations concerning the side effects of his medications and limited Claimant accordingly. R. 26.

[4] The undersigned notes that the ALJ assigned little weight to each of Dr. DeLuca's opinions and Claimant has not challenged those decisions. R. 27-28; *see* Doc. 15.

and, as a result, it is unnecessary to consider Claimant's arguments challenging other aspects of the ALJ's credibility determination.

That said, in the interest of completeness, the undersigned will address Claimant's arguments challenging the ALJ's credibility determination. First, Claimant argues that the ALJ erred by relying on Claimant's activities of daily living in determining that his testimony concerning the intensity, persistence, and limiting effects of his impairments was not entirely credible. Doc. 15 at 15. The ALJ found that Claimant's activities of daily living, such as his trips to the cinema and church, undermined his allegations that he could only sit for short periods of time and had difficulty concentrating. R. 24. Claimant points to evidence that he claims undermines the ALJ's reliance on such activities, such as the frequency with which he went to the cinema and the difficulty he has sitting through a movie. Doc. 15 at 15. Even if the undersigned agreed with Claimant and deemed unsupported the ALJ's reliance on Claimant's activities of daily living, the undersigned would not recommend reversal. The Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence, not whether other evidence supports a different outcome. *Foote*, 67 F.3d at 1558. Thus, the Court must affirm the ALJ's decision if it is supported by substantial evidence. This is true even if the Court found that the evidence the Claimant cites preponderates against the Commissioner's decision. *Bloodsworth*, 703 F.2d at 1239. Therefore, even if the undersigned agreed that the evidence Claimant cites preponderates against the ALJ's findings concerning Claimant's activities of daily living, reversal is not warranted because, as discussed in the foregoing paragraphs, the ALJ's credibility determination is supported by substantial evidence. Second, Claimant argues that the ALJ's credibility determination is erroneous because he failed to apply the correct legal standards to Dr. Moyer's treatment records. Doc 15 at 15-16. This argument depends upon the success of

Claimant's first assignment of error. But the undersigned found Claimant's first assignment of error unavailing. *See supra* pp. 3-7. Therefore, the undersigned finds Claimant's second argument challenging the ALJ's credibility determination similarly unavailing.

In summary, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence. Therefore, it is respectfully recommended that the Court reject Claimant's second assignment of error.

## V.      Conclusion

Accordingly, it is respectfully **RECOMMENDED** that the Court:

1. **AFFIRM** the Commissioner's final decision; and
2. Direct the Clerk to enter judgment in favor of the Commissioner and against the Claimant, and close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 4, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy